In the Matter of the Arbitration between MAURICE TESCHNER, Appellant, and DAVID LIVINGSTON, as President of District 65, Distributive, Processing and Office Workers of New York and New Jersey, C. I. O., et al., Respondents.

First Department, February 23, 1955.

*Murray I. Sommer* of counsel (*Bogart & Lonergan,* attorneys), for appellant.

*Irving Rozen* of counsel (*Milton C. Weisman* with him on the brief; *Weisman, Allan, Spett & Sheinberg,* attorneys), for respondents.

BOTEIN, J. Petitioner, an individual engaged in a small business, whose only employee was a shipping clerk, entered into a collective bargaining agreement with respondent union containing a sweeping arbitration clause, as well as the following provision: "The Employer shall have the absolute right to go out of business at any time during the term of this agreement and such right shall not be questioned by the Union. Upon such event, all employees employed more than six months, shall receive two weeks pay."

Two months later, allegedly because of poor business conditions, petitioner surrendered his store lease, disposed of his stock, discharged his one employee and gave him three weeks' severance pay. The union contends he really has not gone out of business but has continued or resumed business through the device of a newly formed corporation. It asserts, among other things, that petitioner is not, as he claims, an employee of the new corporation but dominates it; and that the corporation deals with the same suppliers and customers as did petitioner, has the same stock in trade, machines and office equipment.

The agreement provides for arbitration of "all complaints, controversies, disputes, and grievances arising between the Employer and the Union concerning the interpretation, operation, application or performance of the terms of this agreement, or any complaint, controversy, dispute or grievance involving a claimed breach of any of the terms or conditions of this agreement". The union has served a demand for arbitration of the "Failure to employ Sol Schor, in violation of clause No. 5 of the said agreement." The demand, at least on its face, therefore encompasses the submission to arbitration of the question as to whether petitioner has in fact gone out of business, as that circumstance bears directly on whether he has violated clause No. 5 in failing to continue the employment of Schor.

It is, of course, not disputed that the parties entered into an agreement containing an arbitration clause. The only question is whether the contract is still operative as between the parties; and this question hinges on whether or not petitioner really went out of business, as contemplated in the above-quoted clause of the agreement. The issue is not whether petitioner had the

*right* to go out of business, a right he clearly enjoyed, but whether he *did in fact* go out of business.

If the corporation was formed in furtherance of a scheme to avoid petitioner's obligations under the contract, it could follow that the petitioner is still in business within the contemplation of the parties and that he should be held to the provisions of clause No. 5. In this respect the instant case can be distinguished from *Matter of Kosoff* ("*Jones*") (276 App. Div. 621), relied on by petitioner, as there the petitioner employer was a corporation which had been legally dissolved; and irrespective of whether it had dissolved in good or bad faith, it no longer survived to be accountable in arbitration proceedings under the contract. Furthermore, as Justice CALLAHAN aptly said (p. 623): "In this connection it may be noted that the present proceeding is not against an officer or stockholder, and that the employer's business was the manufacture of *knitted* polo shirts for women and children, whereas the new business in which the president-stockholder of the employer corporation proposed to engage was the manufacture of *woven* sport shirts for the men's trade."

In *Matter of Shapiro* (*Rosenblatt*) (282 App. Div. 245), also cited by petitioner, there was a preliminary issue as to whether the petitioner partnership " was, in fact and in law, dissolved " (p. 247). In the instant case, however, there is no question but what the individual petitioner is very much alive. There cannot be, as in the *Kosoff* and *Shapiro* cases, any question of the survival of the party to the arbitration agreement.

Nor does analysis of *Matter of Binger* (*Thatcher*) (279 App. Div. 650, affd. 304 N. Y. 627) and *Matter of Minkin* (*Halperin*) (279 App. Div. 226, affd. 304 N. Y. 617) give any comfort to petitioner. In the *Binger* case the court found on undisputed facts that the contract had been " liquidated " by a full and final accord and satisfaction agreement. In the *Minkin* case (p. 228) the court, again relying on those facts which for the purposes of its decision were undisputed, held that the issue submitted for arbitration was not a " controversy or claim arising out of, nor does it have relation to," the parties' agreement. An element common to all of these cases relied upon by petitioner is that the contract under which arbitration was sought had been completely and incontrovertibly destroyed.

In the afore-mentioned cases, therefore, no working issues of fact or law were presented for submission to the arbitrators. Here a sharply disputed issue exists as to whether the petitioner has gone out of business. The question as to whether the con-

tract was operative on the date of the demand is on its face a bona fide dispute and not a claim " so unconscionable or a defense so frivolous as to justify the court in refusing to order the parties to proceed to arbitration " (*Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills,* 239 N. Y. 199, 202).

In *Matter of Lipman (Haeuser Shellac Co.)* (289 N. Y. 76) the party opposing arbitration contended that the contract of arbitration had been cancelled and terminated by agreement of the parties. Certainly a cancelled contract is as inoperative as a contract in which one of the parties has gone out of business pursuant to an express right given to him in the contract. There might even be some question as to whether a valid exercise of the right to go out of business worked something akin to a suspension, rather than a cancellation of the contract. Yet the Court of Appeals held that the parties were not entitled to a trial of that issue by jury, saying (p. 80) : " While it must ever be borne in mind that a court has no power to grant a motion to compel arbitration unless the subject-matter is comprised within the agreement to arbitrate made by the parties, yet when once an agreement to arbitrate has been made, such an agreement must be considered in the light of the broad language used in the above arbitration statute. (Civ. Prac. Act, § 1450.) *This language seems to imply that all acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrators.* It is to be noted that, contrary to the contention of appellant, the statute only requires the contract to have been made and does not require that it shall continue to be in existence. The language of the agreement to arbitrate of course, must be sufficiently broad so as to permit of the application of the general principle that all issues subsequent to the making of the contract are not for the court but for the arbitrators. Where, however, as here, the language of the provision providing for arbitration uses not only the phrase ' any and all controversies arising out of the contract ' but also ' any and all controversies in connection with the contract,' this language would appear sufficiently broad to express the intention of the parties to include within the exclusive jurisdiction of the arbitrators as a general rule all acts by the parties giving rise to issues in relation to the contract, except the making thereof." (Emphasis supplied.)

This court cited the *Lipman* case in *Matter of Compagnie Francaise des Petroles (Pantepec Oil Co., C. A.)* (279 App. Div. 851, affd. 305 N. Y. 588) for the proposition that a question

of whether a sales agreement had been terminated should be left to the arbitrators.

The scope of the arbitration clause in the *Lipman* case is no greater than in the contract under consideration here, particularly since the arbitration clause is implemented by the following provisions in subdivision (D) of clause 15: " (D) The arbitration procedure herein set forth is the sole and exclusive remedy of the parties hereto and the workers covered hereby, for any claimed violations of this contract, and for any and all acts or omissions claimed to have been committed by either party during the term of this agreement, and such arbitration procedure shall be (except to enforce, vacate, or modify awards) in lieu of any and all other remedies, forums at law, in equity or otherwise which will or may be available to either of the parties."

Since the question of whether petitioner has in fact gone out of business bears directly on the subject matter of the demand, and since it arises from an act of a party performed subsequent to the making of the contract, there is presented an issue which lies exclusively within the jurisdiction of the arbitrators. The other points raised by appellant were decided correctly at Special Term and do not require further discussion.

The order of Special Term, denying the application of petitioner for a stay of the arbitration proceeding, should be affirmed.

COHN, J. P., and CALLAHAN, J. (dissenting). Petitioner, a small textile jobber, entered into a collective bargaining agreement with respondent union on November 17, 1953, with respect to his only employee, a shipping clerk. In January, 1954, the poor financial condition of his business allegedly required its forced liquidation, and petitioner thereupon disposed of his inventory, surrendered his leasehold, dismissed his employee and gave him three weeks' severance pay.

The collective bargaining agreement between petitioner and the union provided for the adjustments of all complaints and disputes arising between petitioner as employer and the union concerning the interpretation, operation and performance of the terms of the agreement. It also contained the following provision: " The Employer shall have the absolute right to go out of business at any time during the term of this agreement and such right shall not be questioned by the Union. Upon such event, all employees employed more than six months, shall receive two weeks pay." This clause is patently exclusive of the prior omnibus clause which requires employer and union to

submit controversies to arbitration. Under the provisions of this contract, petitioner clearly had the right to go out of business at any time. This right he exercised.

The union contends, however, that the question as to whether petitioner actually terminated his business or whether he was continuing it under the guise of a corporation, demonstrates the existence of a bona fide controversy which should be determined only by the arbitrator. However, such a question on the face of the contract is beyond the scope of the arbitration provisions of the contract.

What was stated by this court in the *Matter of Kosoff* ("*Jones*") (276 App. Div. 621, 624, affd. 303 N. Y. 663) is particularly apposite here: " The demand for arbitration does not appear to assert any claim of damages for fraud. Even aside from the form of the demand, we think that no arbitrable issue could exist with respect to the employer's good faith. In order to constitute actionable bad faith it would be necessary that the corporate employer had assumed an obligation not to dissolve its corporate existence during the period of the contract or had assumed some other contractual obligation that survived dissolution. We find no such obligation express or implied in the agreement between the parties ".

By agreement of the parties, the right on the part of petitioner to liquidate his business may not even be questioned by the union; any dispute concerning it is effectively removed from the area of arbitration.

Cases such as *Matter of Lipman* (*Haeuser Shellac Co.*) (289 N. Y. 76) are distinguishable. In that case the question was whether there had been a cancellation of the basic contract by acts of the parties. The arbitration clause included any and all controversies " in connection with the contract." The issue of whether there had been cancellation by act of the parties was held to be for the arbitrator. A contrary ruling was indicated when the parties had effected an accord and satisfaction and liquidated their contract (*Matter of Binger* [*Thatcher*], 279 App. Div. 650, affd. 304 N. Y. 627). It has also been held that arbitration may not be had under the provisions of a contract that has been unambiguously cancelled and released by subsequent agreement of the parties (*Matter of Minkin* [*Halperin*], 279 App. Div. 226, affd. 304 N. Y. 617).

In the present case, the collective bargaining agreement itself provided that " The Employer shall have the absolute right to go out of business at any time during the term of this agreement, and such right shall not be questioned by the

Union.'' This provision of the contract is so broad that it limits and infringes upon the right to arbitration. It deprives the union of the right even to question the employer's right to dissolve or terminate his business. In the event of termination, the employee becomes entitled to severance pay as provided in the contract, but all other rights are ended. This has the same effect as if the contract itself expressly provided that there would be no right to arbitration after the employer went out of business. If, therefore, the employer has effected a termination of his business in good faith, there remains no contract and no arbitrable issue between the parties. A factual question is raised, however, as to whether the employer actually has gone out of business or is operating the same business under a newly organized corporation known as D. C. Fabrics, Inc. This factual issue as to the employer's good faith in terminating the business is not a matter for the arbitrator, but must be resolved after a trial. (See *Matter of Shapiro [Rosenblatt]*, 282 App. Div. 245.)

The order so far as appealed from should be reversed, motion to stay arbitration granted, and a trial directed as to petitioner's good faith in terminating his business.

BREITEL and RABIN, JJ., concur with BOTEIN, J.; COHN, J. P., and CALLAHAN, J., dissent in opinion.

Order affirmed, with $20 costs and disbursements to respondents.