Henry Clay Greenberg, J.
The petitioner is engaged in the production and distribution of motion pictures. The respondent Screen Publicists’ Guild etc. is a labor union whose members are employees in the petitioner’s advertising and publicity department. The parties entered into an agreement on September 27, 1946, covering wages and hours and certain other matters relating to employment and arbitration.
In August, 1947, the petitioner discharged nine employees who are members of the union. They were given severance pay. The union objected to the discharge and under date of *234 December 1, 1947, demanded arbitration of the issues in dispute. The petitioner refused to accede to arbitration contending that the dispute did not arise under the contract. Accordingly, it seeks to stay arbitration under section 1458 of the Civil Practice Act.
The agreement, insofar as pertinent, provides:
“ 8. Employees may be discharged for just cause, as follows: (1) drunkenness, (2) dishonesty, (3) insubordination.
‘ ‘ If the existence of just cause for discharge be disputed by Guild and if such dispute cannot be adjusted between Guild and Company within fourteen (14) days after the date of discharge, the dispute shall be settled by arbitration as hereinafter provided for. * * *
‘ ‘ 10. If an employee be discharged except for just cause specified in Article 8, he, shall, unless otherwise specifically provided in this contract, be paid severance pay.
“ Company reserves the right to limit, transfer, curtail, or discontinue its operation of the Advertising and Publicity Departments, or either of them, in whole or in part, at any time. Company considers it advisable to do so, without incurring any liability whatsoever for so doing, providing such action does not result in a speed-up or overloading of the remaining employees.
“ In case of a discharge otherwise than for one of the causes specified in Article 8, Guild shall have the right to make representations to Company that such discharge was for a reason personal to the discharged employee and not based upon an economic or business reason and Company agrees to consider and discuss such representations with Guild.
‘ ‘ In any event, the decision of Company as to whether the discharge was or was not for an economic or business reason shall be final.”
The court interprets these provisions of the agreement as follows:
(1) Where the discharge was for drunkenness, dishonesty, or insubordination, the union was given the right under article 8 to arbitrate the existence of just cause for discharge.
(2) Where the discharge was for reasons other than drunkenness, dishonesty or insubordination, the power of the petitioner to discharge at will is unrestricted and its only obligation in such an event is to pay severance pay.
(3) Where employees are discharged for reasons other than those specified in article 8, the union was given the right to complain to the company that the discharges were in fact for *235 personal reasons. Arbitration, however, in this eventuality was not permitted.
(4) Where the discharge was for an economic or business reason, the decision of the petitioner under the very language of the agreement was final.
Here the discharges were not for cause as defined in the agreement, but for business or economic reasons. The company’s decision was final and when it allowed severance pay, it satisfied its obligation under the contract. Complaint was the only relief granted to the union upon such discharge.
Respondent argues that while the company had the right to transfer, curtail or discontinue its advertising and publicity departments, in whole or in part, it was not permitted to do so if it resulted in a speed-up or overloading of the remaining employees. This provision will not assist the respondent. The clause quoted does not even purport to refer to the petitioner’s right to make discharges. It merely provides that in connection with any transfer of duties from one employee to another, the transferee is not to be overloaded or speeded-up. This clause may give rise to complaint by those employees. It does not confer a right on the discharged employees to invoke arbitration.
The respondent contends further that under article 28 of the agreement the parties thereto undertook to submit to arbitration any and all disputes arising under the contract, including a dispute as to its interpretation, and that, therefore, since there is a dispute as to its interpretation, the matter should be arbitrated. The answer to this contention is found in the agreement itself, which provides that where the decision of the company shall be final, as in the instant case, neither such decision nor matter or matters involved therein shall be arbitrable.
The power of the court in the circumstances to stay arbitration is clear. (See Matter of Kramer v. Uchitelle, 288 N. Y. 467; Matter of Kelley, 240 N. Y. 74.)
The motion is granted.
On Motion for Reargument
This is a motion by the respondents for reargument of petitioner’s motion to stay arbitration. The parties appeared before the court and engaged in oral argument. As a result all of the differences between them except one were composed. A letter dated January 28, 1948, was jointly signed which embodied the points of agreement as follows:
*236 1. The terms “ discharge for economic or business reason ” and “ lay-off ” are interchangeable and have the same meaning and effect. In consequence, all of the provisions of article 10 of the agreement are equally applicable, regardless of whether an employee is “ laid off ” or whether he is “ discharged ” for an economic or business reason.
2. Where there has been a layoff or discharge for an economic or business reason which has resulted in a speed-up or overloading of any of the remaining employees, the issue as to whether such speed-up or overloading has occurred where the same is denied by the company presents an arbitrable dispute under article 28 of the agreement. Hence the question as to whether the termination of employment of the nine employees whom the company claims to have discharged for economic or business reasons in August, 1947, resulted in á speed-up or overloading of any of the remaining employees is arbitrable.
3. If the arbitrator shall find that such a speed-up or overloading has occurred, he shall direct that the company shall promptly take such action in its discretion to correct the speedup or overloading as it may deem necessary, provided that such action is consistent with the company’s obligations under the contract, and provided further that if the speed-up or overloading cannot be corrected except by the company’s re-enlarging its staff, the company shall rehire such of the discharged or laidoff employees who have performed the work in question as may be necessary to correct the condition, and such employees shall be rehired in at least the same classification and for the same salary paid them prior to their discharge or layoff.
The parties are in disagreement, however, as to the proper interpretation of the first sentence in the fourth paragraph of article 10. It is the union’s contention that the petitioner’s right to limit, transfer, curtail or discontinue its advertising and publicity departments in whole or in part is restricted by this provision, so as to limit the petitioner’s right to assign work previously performed by any of the discharged or laidoff employees to any other employee not doing the same ‘ ‘ type of work ’ ’. The union also contends that the provision as so interpreted and as applied to the particular facts involved in this case has been violated by the petitioner, and that the issues which it raises with respect to the interpretation and application of these provisions and their alleged violation constitute arbitrable disputes under the agreement.
The petitioner argues that the provisions in the fourth paragraph of article 10 relating to re-employing laidoff employees *237 in the event of reinstatement of the type of work previously performed by them cannot be interpreted as a restriction on the second paragraph of article 10 recognizing the company’s right to limit, transfer or curtail its advertising and publicity departments. The petitioner further urges that the contract is so clear on this point that no arbitrable issue is presented.
The disputed paragraph provides in substance that after employees have been laid off for economic reasons, if the company re-expands its staff, the laidoff employees shall be given the first opportunity to return to work to any of the new jobs that they are capable of handling. There is nothing-in this language nor in any of the other provisions of article 10 of the agreement which may logically be interpretated as intending to take place any limitation on the right of the company recognized in the second paragraph of article 10 to limit, transfer, curtail or discontinue its operation of the advertising and publicity departments in whole or in part at any time the company considers it advisable to do so. The plain meaning and intention of the parties as gathered from the entire instrument which they executed is that (1) the company had the right to curtail or discontinue in whole or in part its operation of the advertising and publicity department even though it resulted in the assignment of work previously performed by any of the discharged or laidoff employees to any other employee, or employees who were not doing the same type of work; and (2) that if the company reopened its publicity and advertising department or expanded its staff, the laidoff employees were to have the right to a first refusal of any of the new jobs that they are capable of handling. If the work which was formerly done by the discharged or laidoff employees and which thereafter was assigned to other employees at the time in question not doing the same type of work, resulted in the speed-up or overloading of such employees, then the union was entitled to arbitration to determine this issue in accordance with the joint letter of the parties dated January 28, 1948.
Except as herein amended, the disposition heretofore made remains in full force and effect. Accordingly, the motion for reargument is granted to the extent indicated in this opinion.
Settle order.