**UNITED STEELWORKERS OF AMERICA, AFL–CIO, an unincorporated association, Plaintiff,**

**v.**

**WARRIOR & GULF NAVIGATION COMPANY, a corporation, Defendant.**

Civ. A. No. 2100.

United States District Court
S. D. Alabama, S. D.

Dec. 22, 1958.

Arthur J. Goldberg, Gen. Counsel, David E. Feller, Associate Gen. Counsel, United Steelworkers of America, AFL-CIO, Washington, D. C., Hugo Black Jr., Cooper, Mitch, Black & Crawford, Birmingham, Ala., for plaintiff.

Samuel Lang, Kullman & Lang, New Orleans, La., T. K. Jackson Jr., Armbrecht, Jackson, McConnell & DeMouy, Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

The above entitled cause came on to be heard upon motion for preliminary injunction under Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, based upon plaintiff's complaint to compel defendant to arbitrate, under a labor contract, whether defendant has the right to contract out, or subcontract, maintenance work. The plaintiff's motion for preliminary injunction was set down for hearing on October 30, 1958, prior to which defendant filed in opposition to the motion for preliminary injunction, a motion to dismiss, and answer to the complaint. At the hearing on that day counsel for the parties stipulated that all pleadings and matters presented by them be consolidated, tried, and disposed of at one and the same time, and that testimony and other evidence be presented as if on final hearing for a permanent injunction as well as the preliminary injunction. The Court on the same day, after hearing arguments by opposing counsel, and after duly considering same, reserved ruling on defendant's motion to dismiss the complaint and on the plaintiff's motion for preliminary injunction, and denied an oral motion by plaintiff to strike the Second, Third and Fourth defenses of the defendant's answer. Testimony and exhibits were presented by the parties, with opportunity for cross-examination, after which the matter was on the same day submitted to the Court. The Court, having duly considered the arguments, citations of legal authorities, pleadings and evidence of the parties submitted herein, and being fully advised in the premises and after due and full consideration, now makes the following:

### Findings of Fact.

1. The plaintiff, United Steelworkers of America, AFL-CIO, is an unincorporated labor organization within the meaning of Section 2, paragraph (5) of the National Labor Relations Act, 61 Stat. 137, 29 U.S.C.A. § 152, and Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185.

The plaintiff is engaged in representing employee members in collective bargaining with employers who are employed in the steel industry, including the defendant, Warrior & Gulf Navigation Company, a corporation having its principal place of business at Chickasaw, Alabama, within this District and engaged in transporting steel products through several Southern states as a contract carrier regulated by the Interstate Commerce Commission. The aforesaid activities of the plaintiff and the defendant affect commerce within the meaning of the statute above cited.

2. The plaintiff and the defendant are parties to a contract covering the maintenance employees, among others, at the Chickasaw terminal, dated September 25, 1956, and effective until midnight September 25, 1959, the pertinent portions of which read as follows:

"Section 10.

"Adjustment of Grievances.

"Issues which conflict with any Federal statute in its application as established by court procedure or matters which are strictly a function of management shall not be subject to arbitration under this section.

"Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise, there shall be no suspension of work on account of such differences but an earnest effort shall be made to settle such differences immediately in the following manner:

"A. For Maintenance Employees:

"First, between the aggrieved employees, and the Foreman involved;

"Second, between a member or members of the Grievance Committee designated by the Union, and the Foreman and Master Mechanic;

"Third, between a member or members of the Grievance Committee and at the option of such committee a representative of the National Organization of the Union, and the Vice President;

"Fourth, between the representatives of the National Organization of the Union and the representatives of the Executives of the Company; and,

"Fifth, if agreement has not been reached the matter shall be referred to an impartial umpire for decision. The parties shall meet to decide on an umpire acceptable to both. If no agreement on selection of an umpire is reached, the parties shall jointly petition the United States Conciliation Service for suggestion of a list of umpires from which selection will be made. The decision of the umpire shall be final. The expense and salary incident to the services of the umpire shall be paid jointly by the Company and the Union.

\* \* \* \* \* \*

"Section 11.

"Management.

"The management of the Company and the direction of the working forces, including the right to hire, suspend or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work, or for other legitimate reasons, is vested exclusively in the Company, provided that this will not be used for purposes of discrimination against any member of the Union."

3. On August 22, 1958, a number of employees signed a grievance which was presented to the defendant by the plaintiff and which read as follows:

"We are hereby protesting the Company's actions, of arbitrarily and unreasonably contracting out work to other concerns, that could and previously has been performed by Company employees.

"This practice becomes unreasonable, unjust and discriminatory in lieu of the fact that at present there are a number of employees that have been laid off for about 1 and ½ years or more for allegedly lack of work.

"Confronted with these facts we charge that the Company is in violation of the contract by inducing a partial lock-out, of a number of the employees who would otherwise be working were it not for this unfair practice."

4. The plaintiff has not suggested that there is any provision in the labor contract which supports this grievance, and there is in fact no provision in said labor contract on which it may be grounded. Plaintiff contends that the language in Section 10 of the contract is broad enough to require that this dispute be submitted to arbitration; it asserts that the Court has the duty of determining whether there is any issue to be arbitrated.

5. The defendant was first organized in 1940, and, as an incident to its transportation business, maintains and operates a repair and maintenance yard at its main terminal at Chickasaw, Alabama.

6. The defendant has contracted out construction, repair and maintenance work practically since the inception of its business; it first signed a labor contract with the plaintiff several years prior to the present one.

7. The defendant has contracted out such repair, maintenance and construction work solely for reasons of economy and efficiency.

8. Throughout the successive labor agreements between these parties, including the present one, the plaintiff has demonstrated that it was and has been aware of the defendant's practice of contracting out such work, and it has unsuccessfully sought to negotiate changes in the labor contracts, and particularly during the negotiation of the present labor agreement, in the year

1956, which would have limited the right of the defendant to continue the practice of contracting out such work.

9. None of the contracts between the parties affecting the employees involved here has ever contained any provision limiting or abridging in any manner the defendant's right to contract out work of any kind, nor has there been any complaint or grievance at any time prior to August 22, 1958, that any of the labor contracts between the parties in any way limited or abridged the right of the defendant to contract out maintenance or repair work.

10. The Court has read the labor contract carefully and is unable to find in it any provision which could be interpreted to mean that the defendant has surrendered its managerial right to contract out work, or whereby the defendant has agreed to confide in an arbitrator the right to review the defendant's business judgment in contracting out work.

11. On the other hand, the labor contract expressly recognizes the existence of, and reserves to the sole judgment of defendant, matters which are strictly a function of management; and the labor contract expressly prohibits arbitration of matters which are strictly a function of management. The Court finds that the contracting out of repair and maintenance work, as well as construction work, is strictly a function of management not limited in any respect by the labor agreement involved here.

12. The defendant has five different contracts with labor organizations, three of them with the plaintiff (one at Port Birmingham, Alabama, covering employees of the defendant there; the second, which is the one here involved, covering the employees at the terminal at Chickasaw, Alabama; and the third covering the deck hands and other unlicensed personnel aboard all of defendant's vessels); the other two labor contracts of defendant are with the Marine Engineers Beneficial Association covering the engineroom personnel aboard its vessels, and with the Masters, Mates, and Pilots Union covering the wheelhouse employees aboard its vessels.

13. There has been no showing by the plaintiff that the defendant has engaged, in or, insofar as these proceedings are concerned, could be adjudged to have engaged in any conduct which has violated any of the provisions of the present labor contract.

### Conclusions of Law.

Upon the foregoing findings of fact the Court concludes:

1. The Court has jurisdiction over the parties and the subject matter under Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185.

2. The parties are properly before the Court.

3. The issue presented is whether the defendant can be compelled to arbitrate the grievance protesting the contracting out of work.

4. The labor contract does not prohibit, and is not susceptible of being interpreted to require that defendant is prohibited from contracting out work.

5. The labor contract does not give the plaintiff or any of its members or any of the employees of the defendant the right to have arbitrated the question of whether the defendant may contract out work.

6. The right to contract out work is an inherent, traditional right of management which may not be questioned or subjected to arbitration in the absence of agreement on the part of the defendant or an express limitation thereof set forth in the labor contract.

7. The Court has considered the specific contention that Section 10 requires arbitration "should any local trouble of any kind arise," and finds from examination of the remainder of Section 10, of Section 11, of the contract as a whole, the evidence and the arguments of the parties, that this language cannot be interpreted to limit the right of the defendant to contract out work.

8. Defendant may not be required to arbitrate the grievance, and consequently defendant may not be restrained from refusing to arbitrate said grievance since plaintiff has no right to arbitration of the grievance under the labor contract.

### Order.

An order shall be and it is hereby entered denying the motion for a preliminary and permanent injunction and dismissing the complaint.

See also, 146 F.Supp. 195.

It Is, Therefore, Ordered by the Court that this cause be and the same hereby is, Dismissed, with costs taxed against plaintiff.