Edgar J. Nathan, Jr., J.
Petitioner, a large retail seller of food products, moves to stay an arbitration proceeding instituted by respondent, a union representing petitioner’s warehouse employees in the Metropolitan New York area. Respondents cross-move to compel arbitration, and further to enjoin petitioner from permanently discontinuing the egg candling departments in its Garden City and Glendale warehouses until the arbitration proceedings are concluded.
Petitioner, late in 1959, decided to discontinue its egg candling departments in the two afore-mentioned warehouses, effective *561 April 1,1960. It is asserted that this decision has been reached solely on the basis of economic factors, including an analysis of available warehouse space. The respondent union was notified of this decision by letter of December 31,1959. The decision, if carried into effect, will deprive approximately 300 members of the bargaining unit represented by respondent of their jobs, since the egg candling will be done by independent contractors. In February of 1960 the parties negotiated informally in an attempt to resolve the dispute. Thereafter, the union requested the arbitration which petitioner seeks to stay.
Under article XII, paragraph (a) of the collective bargaining agreement, arbitration may only be had concerning disputes “ regarding the interpretation, application, breach or claim of breach of this agreement”. Paragraph (e) of article XII provides that the arbitrator “ shall have no power to add to, delete from, modify, or alter the provisions of this agreement ’ ’. Therefore, if respondent has any right to arbitrate this dispute it must, of necessity, be embodied in the collective bargaining-agreement.
Petitioner denies the existence of that right by pointing- to article II of the agreement which reserves to management1 * The operation of the company’s business ” and more specifically to article XVIII which sets forth the severance pay and other rights of employees who lose their jobs because of management decisions to close warehouse departments.
Were it clear that the terms of the collective bargaining agreement unambiguously preclude the arbitration sought, the petitioner would, of necessity, prevail (Matter of General Elec. Co. [United Elec. Radio Mach. Workers], 300 N. Y. 262; Matter of International Assn. of Machinists [Cutler-Hammer, Inc.], 271 App. Div. 917, aff. 297 N. Y. 519).
Respondent does not deny that the rig-ht to close a warehouse department is a management prerogative which is not subject to arbitration, provided the decision is made in good faith. However, it is respondent’s contention that the egg candling department is not to be closed for economic reasons, but rather is an attempt, made in bad faith, to intimidate the union.
The union’s charge is based upon the following* factors:
Prior to the expiration of the collective bargaining agreement in June, 1959, the union contended that “ selecting ” work, which was then being performed by independent contractors, was within the scope of the bargaining unit and therefore was properly work which should be performed by members of respondent union. The company refused this request and a six-week strike ensued, in which this dispute was a principal issue. There *562 AÍter, á new contract was signed which gave to 'réspóndetit unión the right to perform séleéting work "as of Séptember, 1960.
During the negotiations of February, 1960, petitioner offéred to refrain from discontinuing thé candling departments if respondent would agreé to relinquish its right to the Selecting work for the duration of the contract: Réspondént áísó alleges that both the candling and selecting woik cán bé doné siñlúltanéously in the warehouses, contrary id petitioner's claim, "since thé selecting work will only require an additional 35 to 40 workers at each warehouse.
It is clear that respondents ’ ‘claiín óf ‘ ‘ had faith ’ ’ by petitioner góes beyond mere allegations and presents a genuine issue "of fact that creátes an arbitrable dispute (Matter of Otis Elevator Co. [Carney], 6 N Y 2d 358; Matter of Teschner [Livingston], 285 App. Div. 435, Affd. 309 N. Y. 972).,, .Petitioner cites, among "others, Matter of General Elec. Co. (Mann) (17 Misc 2d 715) and Matter of Berger (World Broadcasting System) (191 Misc. 1043), in support óf its position. These cases are not in point, since they are found, 'either expressly or impliedly, that the employer had pró'ceé'déd in good faith. (See, also, Matter of Willoughby, Realty & Management Co. [Independent Union of Bldg. Serv. Employees], 9 AD 2d 889.)
Respondent also requésts that the pé’titiónér bé staybd from discontinuing its candling departments prior to the outcóm'e of the arbitration. "Whether sections 145Ó and 1451 of the Civil Practice Act can be read to give the court discretion to grant such a stay is not here reached since thé court find's that the arbitrator can make "the union’s employees whole for any harm done them by the discontinuance Should.,‘the árbitrátioh result in a decision in favor of respondent. • Thus, thér'é will not be irreparable harm and nó injunction liés.
The motion to stay arbitration is denied and the cross m'ótión to direct arbitration is granted. Settle order Accordingly.