NEW YORK HEALTH AND HUMAN
SERVICE UNION, 1199/SEIU, AFL–
CIO, Plaintiff–Appellee,

v.

NYU HOSPITALS CENTER,
Defendant–Appellant.

Docket No. 03–7304.

United States Court of Appeals,
Second Circuit.

Argued: July 14, 2003.

Decided: Sept. 8, 2003.

Daniel J. Ratner, Esq., Levy, Ratner & Behroozi, New York, NY, for Plaintiff–Appellee.

Joel E. Cohen, Esq., McDermott, Will & Emery, New York, NY, for Defendant–Appellant.

Before: VAN GRAAFEILAND, CALABRESI, WESLEY Circuit Judges.

VAN GRAAFEILAND, Senior Circuit Judge.

This case concerns a disputed election held on October 30, 2002, to determine whether some 400 employees of Defendant–Appellant New York University Hospitals Center (N.Y.UHC) would join Plaintiff–Appellee New York's Health and Human Service Union, 1199/SEIU, AFL–CIO (the union). In its motion for summary judgment in the district court, the union argued that NYUHC was required to arbitrate the disputes at issue pursuant to an agreement between the parties. The court granted the union's motion, thereby compelling arbitration. For the following reasons, we affirm.

NYUHC, which consists of two hospitals located in New York City, is a member of a multi-employer bargaining association called the League of Voluntary Hospitals and Homes of New York. In January 2002, the League, on behalf of its members, including NYUHC, entered into a Memorandum of Agreement (MOA) with the union. The MOA sets forth, inter alia, rules of conduct which both the union and the League's members must follow whenever the union attempts to organize unrepresented League-member employees. Under the MOA, although the National Labor Relations Board conducts all organizational elections, the parties must comply with the rules of conduct during the period preceding elections; some rules, particularly those governing pre-election communications, are more rigorous than those imposed by standard Board requirements. In addition, the MOA provides for arbitration of alleged violations of the rules of conduct by either the employer or the union. One arbitration clause contained in the MOA provides:

> In cases where it is alleged that either the Union or the Employer has violated the rules of conduct set forth in [the MOA] to such an extent that the violation(s) affected the outcome of the election, and the Arbitrator so finds, then the party violating the rules of conduct shall join in a stipulation setting aside the results of the election and providing for a re-run election by the NLRB, provided that the objecting party has filed timely objections with the NLRB. However, if the Arbitrator does not find that the alleged violation(s) of the rules of conduct affected the outcome of the election, then the objecting party shall withdraw its objections filed with the NLRB.

The union notified NYUHC on July 3, 2002, that it intended to organize roughly 400 of NYUHC's clerical employees. On September 18, 2002, NYUHC, the union, and two NLRB representatives entered into a Stipulated Election Agreement (SEA) detailing how the election would be conducted. One section of the SEA specifies that a "secret-ballot election shall be held under the supervision of the Regional Director [of the Board] ... under the Board's Rules and Regulations." Another section, entitled "POSTELECTION AND RUNOFF PROCEDURES" states that "[a]ll procedures after the ballots are

counted shall conform with the Board's Rules and Regulations."

By a narrow margin, NYUHC's voting employees chose in the October 30, 2002, election not to join the union. The union thereafter timely filed objections with the NLRB and sought arbitration pursuant to the MOA to determine whether NYUHC violated the rules of conduct to such an extent that the outcome of the election was affected. NYUHC, however, refused to arbitrate, arguing that, although the MOA on its face mandates arbitration of the disputes at issue, those sections of the MOA that require post-election arbitration are unenforceable. The union, seeking to compel arbitration, subsequently filed suit in the district court pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In granting the union's motion for summary judgment, the court held that the MOA, as a matter of law, requires NYUHC to arbitrate the alleged breaches of the rules of conduct and whether they affected the outcome of the election.

■■■ We review a district court's grant of summary judgment *de novo*, construing the evidence presented below in the light most favorable to the non-moving party. *See Equal Employment Opportunity Comm'n v. J.B Hunt Transp., Inc.*, 321 F.3d 69, 73 (2d Cir.2003). Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that it has not agreed so to submit. *See Truck Drivers Local Union No. 807, I.B.T. v. Regional Import & Export Trucking Co.*, 944 F.2d 1037, 1042 (2d Cir.1991). The question of arbitrability is undeniably an issue for judicial determination, but courts should not stray into the merits of the underlying grievance. *See id.* at 1042–43 (citations omitted). Where the collective bargaining agreement contains an arbitration clause, there is a pre-

sumption of arbitrability. *Id.* at 1043 (citation omitted). An order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"; doubts should be resolved in favor of coverage. *Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 86 (2d Cir.2002) (citation omitted).

■■■ NYUHC insists that the post-election arbitration provisions contained in the MOA are not enforceable because the representational disputes at issue may only be resolved by the Board itself. As the district court noted in rejecting this argument, our court has stated clearly in *Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561 (2d Cir.1993), that the NLRB does not have exclusive jurisdiction over representational issues. "[A]rbitration is an alternative that may be used to resolve labor disputes ... and courts do not usurp NLRB authority when enforcing the arbitration clauses of a private contract, *even when the matter to be arbitrated is representational.*" *Id.* at 567 (emphasis added). NYUHC attempts to distinguish *J.P. Morgan* by stressing that the contractual agreement at issue in that case wholly circumvented the NLRB, while the MOA in the instant case contains clauses providing for both private arbitration of disputes as well as Board supervision of elections. NYUHC cites no case law in support of the argument that, once Board supervision is invoked, private arbitration agreements contained in so-called "hybrid agreements," like the MOA at issue, become unenforceable. We decline to so hold.

■■■ NYUHC also contends that the terms of the SEA dictating that post-election procedures "shall conform with the Board's Rules and Regulations" effectively

supercede those portions of the MOA providing for post-election arbitration. In support of its position, NYUHC heavily relies upon *Grant's Home Furnishings, Inc.,* 229 NLRB 1305 (1977), which, NYUHC contends "held that when determining whether an election pursuant to a Stipulated Election Agreement is valid [,] the Board must apply the Board's Rules and Regulations." *Grant,* however, is distinguishable from the case at hand inter alia because the parties in *Grant* had not entered into any prior arbitration agreements before signing their Stipulated Election Agreement. We acknowledge that, in reconciling the terms of the MOA and the SEA in the instant case, one could conclude that the SEA's post-election mandates supercede the MOA's arbitration provisions. However, one could also read the SEA, which contains no language explicitly superceding the MOA, as merely supplementary. We therefore agree with the district court that, despite the SEA's terms, it cannot be said with "positive assurance" that the MOA's post-election arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *See Adirondack,* 305 F.3d at 86 (citation omitted).

We have considered NYUHC's remaining arguments on appeal and find them to be without merit.

The Order appealed from is AFFIRMED.