**NORTH FERRY COMPANY, INC., Petitioner,**

v.

**LOCAL 333, UNITED MARINE DIVISION, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO Respondent.**

**No. CV 04–2792.**

United States District Court, E.D. New York.

Oct. 15, 2004.

Kaufman, Schneider & Bianco, LLP, By David Greenhaus, Esq. & Cara A. McCaffrey, Esq., Jericho, NY, for Petitioner.

Vladeck, Waldman, Elias & Engelhard, P.C., By Maureen M. Stampp, New York, NY, for Respondent.

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

Petitioner, North Ferry Company, Inc. ("North Ferry" or the "Company"), commenced this action seeking a stay of arbitration demanded by Respondent Local Union 333, United Marine Division, International Longshoremen's Association, AFL–CIO (the "Union"). The Union opposes the stay and cross-moves to compel arbitration. For the reasons set forth below, the motion to stay is denied and the cross-motion to compel arbitration is granted.

## BACKGROUND

### I. *The Parties and the Collective Bargaining Agreement*

North Ferry operates a ferry service and is a party to a collective bargaining agreement ("CBA") with the Union. The CBA contains a three-step grievance procedure, the final step of which is arbitration. The arbitration provision provides, in pertinent part, that "a grievance concerning the interpretation or application of terms of this Agreement, which has not been resolved under the grievance procedure... shall be referred to arbitration." *See* CBA Art. XIV(a). The only express limitation on the arbitrator's power set forth in the CBA states that "the arbitrator shall have no jurisdiction or power to add to, subtract from, or modify in any way any of the terms of this Agreement." *See* CBA Art. XIV(c).

### II. *The Underlying Dispute and the Demand For Arbitration*

North Ferry employs individuals under various classifications, one of which is Senior Operator. The dispute underlying the arbitration demand here concerns North Ferry's refusal to promote employee Jeffrey Brewer ("Brewer") to the position of Senior Operator.

The CBA at issue covers the time period of January 6, 2003 through January 5, 2007. While this CBA requires North Ferry to employ ten Senior Operators out of the collective bargaining unit, the prior CBA required the employment of fourteen Senior Operators. According to the CBA, the reduction of Senior Operators from fourteen to ten is to be "accomplished through attrition." *See* CBA Art. XV, subdivision (e).

The Union contends that Brewer became entitled to a Senior Operator position after the promotion of an employee from that position to one of management in October of 2003. Although the promotion left the Company with eleven Senior Operators, the Union argued that Brewer was nonetheless entitled to be the twelfth Senior Operator. In support of its position, the Union took the position that an internal promotion does not come within the scope of "attrition" as set forth in the CBA. North Ferry rejected that argument and refused to promote Brewer. On April 14, 2004, the Union demanded a hearing. The dispute was not settled and on May 25, 2004, the Union, by letter, demanded that the issue be submitted to an arbitrator.

### III. *The Present Action*

North Ferry filed a petition seeking a stay of arbitration in the Supreme Court of the State of New York. The Union removed the petition to this court. The Company argues that the position advanced by the Union takes this matter beyond the scope of the parties' agreement to arbitrate. The Company further argues that the Union's demand for arbitration is untimely and therefore a nullity under the CBA. Relying on the broad nature of the parties' agreement to arbitrate, the Union

argues that this court lacks jurisdiction to stay the arbitration. The Union further argues that all issues raised by the Company, including timeliness, are properly raised before the arbitrator and not before the court.

## DISCUSSION

### I. The Federal Arbitration Act

The Federal Arbitration Act (the "Act" or the "FAA") governs this matter and was enacted to promote the enforcement of private agreements to arbitrate. *See Paramedica Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir.2004); *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.*, 189 F.3d 289, 294 (2d Cir.1999); *Infinity Indus., Inc. v. Rexall Sundown, Inc.*, 71 F.Supp.2d 168, 169 (E.D.N.Y.1999). Section 4 of the Act allows a party to petition a court to compel arbitration and empowers the court to hear the parties, and "upon being satisfied" that the making of the agreement to arbitrate is not at issue, to direct the parties to proceed to arbitration in accordance with the terms of their agreement. *See* 9 U.S.C.A. § 4.

### II. Standards Applicable to Requests to Stay or Compel Arbitration

 A court faced with a request to stay or compel arbitration addresses two questions: (1) whether the parties have agreed to arbitrate and if so, (2) whether the scope of the agreement to arbitrate encompasses the claims asserted. *Chelsea Square Textiles*, 189 F.3d at 294; *Provident Bank v. Kabas*, 141 F.Supp.2d 310, 315 (E.D.N.Y.2001). A party objecting to the existence of the agreement to arbitrate may raise the same objections available as when denying the existence of a contract. 9 U.S.C. § 2. Such matters are resolved pursuant to state contract law. *Chelsea*

*Square Textiles*, 189 F.3d at 295-96. When deciding whether the parties have agreed to submit a particular question to arbitration, the court answers only the question of arbitrability and does not rule on the merits of the dispute. *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649-50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *New York Health and Human Serv. Union, 1199/ SEIU, AFL-CIO v. NYU Hosps. Center*, 343 F.3d 117, 119 (2d Cir.2003).

 When considering whether a particular dispute falls within an agreement to arbitrate, the strong federal policy in favor of arbitration requires courts to resolve any doubts regarding the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Paramedics Electromedicina*, 369 F.3d at 653; *Chelsea Square Textiles*, 189 F.3d at 294. Arbitration is to be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, resolving any doubts in favor of coverage." *Paramedics Electromedicina*, 369 F.3d at 653-54, quoting, *Smith/Enron Cogeneration Ltd. P'ship. v. Smith Cogeneration Int'l., Inc.*, 198 F.3d 88, 99 (2d Cir.1999); *see also N.Y. Health & Human Serv. Union*, 343 F.3d at 119; *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink and Brewery Workers Union Local 812, Int'l Bhd. of Teamsters*, 242 F.3d 52, 56 (2d Cir. 2001).

Thus, if the plaintiff's allegations "touch matters covered by the parties'... agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Paramedics Electromedicina*, 369 F.3d at 654, quoting, *Smith/Enron*, 198 F.3d at 99; *see also Louis Dreyfus Negoce*

*S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 225 (2d Cir.2001).

## III. *Disposition of the Motions*

### A. *The Motion to Compel Is Granted*

■ There can be no doubt, and indeed, the parties do not dispute, the existence of an agreement to arbitrate. The issue before the court is the second question identified above, *i.e.,* whether the parties' dispute falls within the scope of the arbitration clause. *See Chelsea Square Textiles,* 189 F.3d at 294. Thus, the only questions before the court are whether the interpretation of the word "attrition" and the timeliness of the Union's demand are subject to arbitration.

The arbitration clause in the CBA states, in pertinent part, that "a grievance concerning "interpretation or application of the terms of [the CBA shall] ... be referred for arbitration." " This language has been characterized as a broad agreement to arbitrate. *See, e.g., Louis Dreyfus Negoce,* 252 F.3d at 225–26; *Coca–Cola Bottling,* 242 F.3d at 56; *see also Shaw Group, Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 120 (2d Cir.2003) ("all disputes...concerning or arising out of" an agreement plainly illustrates the parties' intent to submit issues of arbitrability to arbitrator).

■ Where an arbitration clause is broad, only an express exclusion of a particular grievance from arbitration, or powerful evidence that the particular grievance was meant to be excluded, will overcome the strong presumption of arbitrability contained within a collective bargaining agreement. *Paramedics Electromedicina,* 369 F.3d at 653–54; *Louis Dreyfus,* 252 F.3d at 224. In the absence of any such exclusion, a broad arbitration clause encompasses all disputes touching matters covered by the parties' agree-

ment. *Paramedics Electromedicina,* 369 F.3d at 654.

There can be no doubt that the issue of whether or not the internal promotion of an employee is equivalent to "attrition" is a question of interpretation of the parties' agreement. The word "attrition" appears in the CBA and the controversy here is the meaning of that word. Neither North Ferry nor the Union chose to exempt this or any other type of claim from the CBA. The limitation placed on the arbitrator's power not to "add to, subtract from, or modify" the CBA is more properly construed as limiting the arbitrator's ability to extend the scope of its coverage, not the interpretation thereof. In light of the fact that the parties' dispute goes directly to interpretation of the CBA, the court has little difficulty concluding that the dispute between the parties concerning the promotion of Brewer falls within the scope of the parties' broad agreement to arbitrate.

■ The court similarly concludes that the issue of timeliness of the demand is for the arbitrator and not for the court. The Second Circuit has held clearly that the question of whether or not time requirements under a CBA have been met are for the arbitrator to decide. *Schweizer Aircraft Corp v. Local 1752, Internat'l Union United Automotive, Aerospace and Agric. Implement Workers of Am.,* 29 F.3d 83, 88 (2d Cir.1994). Such procedural issues often go to the substantive issues and therefore, must be determined by the arbitrator.

### B. *The Company's Position Was Frivolous*

As a final matter, the court comments that its review of the Company's arguments and the case law relied upon, leads it to conclude that this petition was nothing more than a frivolous attempt to avoid arbitration.

The main case relied upon by the Company was *In re George Rattray & Co.*, 29 Misc.2d 734, 209 N.Y.S.2d 869 (1960). As the citation makes clear, this case was decided in 1960 by the Supreme Court of Nassau County. Research reveals that the case was never appealed to a higher court and has never been cited by another state or federal court. Neither the facts nor the law at issue in that case have any application here.

While *Great Atlantic & Pacific Tea Co. v. Crotty*, 23 Misc.2d 560, 201 N.Y.S.2d 80 (1960), was a motion to stay arbitration, the court there, as here, held that arbitration should be compelled. Dicta in that case, relied upon by the Company, stated only that the petition would have been granted if it were "clear that the terms of the collective bargaining agreement unambiguously preclude the arbitration sought." *Great Atlantic & Pacific Tea Co.*, 23 Misc.2d at 561, 201 N.Y.S.2d at 81. That was neither the case there nor here.

*Mirra Company, Inc. v. School Admin. Dist. # 35*, 251 F.3d 301 (1st Cir.2001) and *BP Chemicals, Ltd. v. Eastman Kodak Co.*, 22 F.3d 1103, 1994 WL 66093 (Fed. Cir.1994), are two more inexplicable citations. The latter case involves the interpretation of a settlement agreement under the contract law of the State of Tennessee. *See BP Chemicals*, 22 F.3d at 1103, 1994 WL 66093. The former, while ruling upon a motion to compel arbitration, was decided under the contract law of the State of Maine. *See Mirra Company*, 251 F.3d at 304.

Other cases relied upon by the Company are similarly inapposite. *Carroll v. United Steelworkers of America, AFL–CIO–CLC*, 498 F.Supp. 976 (D.Md.), *aff'd*, 639 F.2d 778 (4th Cir.1980), was a 1980 case decided by a district court in Maryland that in no way involved arbitration. Finally, while *Leed Architectural Prods., Inc. v. United Steelworkers of Am. Local 6674*, 916 F.2d 63 (2d Cir.1990) and *In re Marine Pollution Serv., Inc.*, 857 F.2d 91 (2d. Cir. 1988), are arbitration cases, they decided the question of whether or not to confirm an arbitrator's decision and not the issue relevant to these proceedings, *i.e.*, whether or not to stay arbitration.

In sum, no case cited by Petitioner requires anything other than entry of an order compelling arbitration. On the contrary, the cases were, at best, not helpful and at worse, a waste of the court's resources.

## CONCLUSION

The parties' dispute is subject to arbitration. Petitioner's motion to stay arbitration is denied. Respondent's cross-motion to compel arbitration is granted.

The Clerk of the Court is directed to terminate all motions in this matter and to close this case.

SO ORDERED.